Microsoft Office Word Document MSWordDoc Word.Document.8 Next case is Mizomi Communications v. Nokia Samsung et al. Microsoft Mobile 2014-11-73-11-71 The case number is MSWordDoc Word.Document.8, Mr. Belanger. Thank you. Is it Belanger? Belanger, your honor. Belanger. May it please the Court, Mizomi appeals from three areas of claim construction below and each of those areas has a common legal basis where the Court read limitations from preferred embodiments and in one instance from extrinsic evidence into the claims during the course of construing the claims. With respect to the instruction term, do you agree that as far as the 215 patent is concerned that our prior decision establishes the meaning of instruction for purposes of the 215 patent? Yes, your honor. Okay. So why then under our cases which seem to suggest that if a patent is of the same family of which the 362 and 436 are, that if the terminology is used, there's a presumption that it's used in the same way, right? And that, your honor, our basic point is that presumption is overcome by the clear difference in the language of the claims from the 215 patent. Okay, yeah, I understand. So explain to me how the language of the claims overcomes that presumption because it seems to me as though the language of the claims doesn't speak to that. Of course, we have the exact same specifications so it can't be that the specification overcomes the meaning that we gave to the term instruction before. How do the claims do that? Yes, your honor. So in the earlier opinion, and I'm at 266 Fed Appendix 935, this Court observed that every claim of the 215 patent requiring a conversion of stack-based instructions into register-based instructions. So in the earlier 215 patent and in this Court's earlier opinion, they observed that every single claim had an express requirement that stack-based instructions be converted into register-based instructions. You mean the omission of that specific language changes the meaning of the term? It changes the context in which it's used. So the dispute in the earlier case was not whether stack-based instructions were being converted to register-based instructions. That was an express requirement of the claims. The narrower issue which this Court resolved was whether control signals fell within the scope of the term instruction. And this Court held that it did not, and we are not challenging that holding here. That the construction of the word instruction itself is not something we dispute. What we dispute is that the limitation of converting stack-based instructions into register-based instructions, which was expressly included in every claim in the 215 patent. If you look to the intrinsic record of these two patents, and I point the Court to Appendix at 4981, the patent examiner rejected the claims for lack of 112 support, observing that the application was directed to a hardware accelerator that converts stack-based instructions into register-based instructions. The applicants responded to that rejection at Appendix 4981 and clearly argued that the broader claims, which did not have that limitation of conversion, were fully supported by the specification and the Patent Office allowed those claims. So the point, Your Honor, is, as is common in continuation practices, that applicants are allowed to amend claims to remove limitations. The fact that the applicants intended to remove that limitation is clear and not really in dispute. I believe that's a core point of the defendant's argument, was that the claims were amended in order to overcome the prior finding of invalidity, or excuse me, of non-infringement. And I believe, Your Honor, that is the core issue with respect to those two patents, is whether the claim language, which the 215 patent... I'm looking at 4981. I'm not seeing the clarity of the two seats there. Where does it say that this covers the conversion of stack-based instruction into control without and doesn't include converting into register-based instructions? So at the top of 4981, there's a block quote from the office action. And it's about, I think, the second full sentence. The patent examiner is saying, the present application describes a hardware accelerator that converts stack-based instructions into register-based instructions. Nowhere in the specification describes that only one execution unit executes both stack-based and register-based instructions. So that's the language of the claim that we have at issue here. Isn't that a different issue than the one we're talking about? No, no, that's exactly the issue, Your Honor. The issue is, not with the definition of the term instruction itself, is whether that conversion requirement should be read into the asserted claims here, and we submit it should not. And if you go down on 4981, the applicant respectively disagrees with the examiner's argument and goes on to explain how an execution unit, which executes both stack-based... Did you have any expert testimony that made the point that you're making? Yes, Your Honor. And if you bear with me, I'll give you a second. It's Dr. Babb, and his testimony is in the appendix at 5981-85. And Dr. Babb, in that testimony, is explaining an altered embodiment, which is found in the specification. Where does he say you don't have to convert, and with respect to that aspect of the prosecution history, that it's not talking about converting stack-based to register-based instructions? So his... If you start at 5981, this is Dr. Babb's declaration, and he has the heading, Nizomi's 362 and 436 patent discloses to one of ordinary skill in the art how to translate stack-based instructions into a decoded output. And that's the core issue, because that's... That's none of the rest in the prosecution history. Right? He's... Excuse me. He's discussing the specification, Your Honor. Right. Okay. If I may spend some of my time on the other 160 patent, feel free to move on. Okay. Thank you, Your Honor. So with the 160 patent, we believe the issue, or the court's error, is similar with respect to two terms. The first term, constant pool. The court below limited the term constant pool to an aspect of the Java virtual machine specification improperly. The Java virtual machine specification is an external reference, which is only mentioned once in the specification, and at that, it's mentioned in the context of a prior art system, which was not disclosed within the Java virtual machine specification. So we believe it was fundamentally improper for the court to start with the extrinsic record in reaching his interpretation. The key issue here is whether the specification and the claims require a separate constant pool that is attached to each loaded class. That was an aspect of commercial implementations of Java at the time of the patent, but that aspect is nowhere described in the specification, and it is nowhere described in the claims. And so for the court's interpretation, he used primarily a portion of the specification to define constant pool, but he added this limitation that a separate constant pool needs to be attached to each loaded class, and that limitation is found nowhere in the specification, nowhere in the claims, nowhere in the intrinsic record. It's only found in an external source describing an external commercial embodiment. And I would point the court to Appendix 281. This is the 160 patent at column 7, lines 44 to 47, where the patent clearly says or describes what the constant pool is in the context of the patent. It says every currently loaded class has a constant pool attached to it. Now what that does not say is that every currently loaded class has its own constant pool or a separate constant pool or a unique constant pool. And the analogy that I would draw would be to say that you have three briefs, each has an appendix. The fact that you might use a consolidated appendix doesn't turn the appendix, doesn't make it no longer an appendix. And that's essentially the dispute here. There is no dispute that the accused products use a constant pool, what defendants themselves refer to as a constant pool. The issue is whether the way that constant pool is used is identical to a prior commercial embodiment. There's nothing in the claims that say that the constant pool must be associated, a separate constant pool must be associated with each loaded class. Nothing in the intrinsic record that would prevent having a shared constant pool that's shared among multiple loaded classes. And so we believe that that finding was clear error and would point, for the earlier point, Appendix 278, Column 1, 61 to 64, makes clear that the Java virtual machine specification is only mentioned once. It's not incorporated by reference and it's not intended to limit the invention. In fact, the opposite, the invention is an improvement over the Java virtual machine specification. The second issue, and on the constant pool issue, we submit that even if this court were to affirm the lower court's construction, which we believe is incorrect, we believe that the court improperly failed to credit on summary judgment the declaration of Dr. Leavitt, who gave testimony explaining why there was insubstantial differences between the constant pool, the accused product, and the constant pool as the court interpreted it. He indicated that he thought the expert's description of the way in which the two systems were equivalent was lacking. However, in the paragraph, or the portion that he texted... The court said you hadn't raised the doctrinal equivalence issue properly, right? The court indicated under Local Rule 3.6, I believe, Your Honor, that the local rules allow a patentee to raise doctrinal equivalence in response to a claim construction that is different than the one the patentee is raising. And the court below found that that was the circumstance, therefore allowed the argument, but disagreed with it. So we believe that the court did allow us to make the doctrinal equivalence argument below, and he rejected it based on failing to credit the facts in the expert's declaration as opposed to the waiver. Do you want to save the rest of your time for rebuttal? If I may, just one minute on the last issue, and then I'll reserve the rest of the time. On the last term, an indication, I think the main confusion and the main error with the court below is this is a method claim. The first step of the method requires storing an indication. The claim separately requires reading data from a memory location, both within the constant pool, but there's nothing in the specification for the claims that require that the indication be only stored in that portion of the constant pool. And the court below acknowledged that he was limiting the claims to one of the two embodiments and reading into the independent claim a limitation of the dependent claim, which we believe is error. I'll reserve the rest of my time. We will save it for you, Mr. Bollinger. And fellies are splitting their argument. Mr. Anderson is taking eight minutes. Yes, Your Honor. I'm Kevin Anderson. I'm representing ARM, but I'm speaking on behalf of the defendants for the hardware patents, the two hardware patents. And I'm splitting my time with Mr. Cohen, roughly equally subject to the court's questions. I want to just jump right into the exchange with Mr. Bollinger and Judge Stein. We believe collateral estoppel provides a perfectly acceptable way to resolve the hardware patents. This dispute's been going on for 12 years. It was the primary dispute during all that time. But collateral estoppel doesn't get you the whole way. It just gives you the meaning in the 215, and then the question becomes, does that create a presumption of the same meaning here? And the question is whether the presumption's overcome. That's not something that was addressed in the prior case. Fair enough? I will agree that the prior case, there was some slight difference. But I think that a presumption should apply because of the meaning of interpretation. How do they agree that the presumption applies? Because I just didn't understand that. Yes. And we think even if that presumption didn't apply, the record here is so overwhelming that... You say it does apply. Well, accepting that it does apply, it's even more overwhelming here that this patent only discloses a translation system. And we cited the portions in our brief... What about the prosecution history? Okay. Prosecution history, I do want to address that. We'll say three things on it. First of all, it wasn't raised in their opening brief. And there's a reason. It wasn't raised in their opening brief is because it doesn't help them at all. That passage there in the prosecution history occurred after this court, the court below, and this court had already rejected their arguments. They didn't tell the examiner on that. And on the substance of that passage in the prosecution history, and this is why it's not in their opening brief and should be considered to be waived, it doesn't help them. If it's the same issue, you don't waive something by failing to make an argument. I mean, everybody argues waiver all the time. We didn't. Go to the merits. Your Honor, we didn't get a chance to address it, and here's on the merits. Go ahead. In that passage on 4981, they cite to... This is their support for their alleged alternative embodiment. They cite to figure three and execution logic 26C. That's what they cite to. That is exactly what this court rejected in the prior case, and we know that because that's in the record at 4101 where it's their brief to this court in the prior case. It starts with the first sentence in there. It discusses execute logic 26C, and the bulk of page 4101 is figure three. That exact argument that they made to the examiner in an ex parte context was rejected by this court in the prior case, and more importantly, you don't see them making that argument at all on execute logic 26 or figure three in this year. I'm sorry. This is really hard for me to follow, but if I read this passage correctly, it's talking about whether the conversion from stack-based instructions to register-based instructions has to take place in an execution unit. But I thought the issue here now was whether the conversion of stack-based instructions into control is something that's covered by the claims or whether the claims are limited to the conversion of stack-based instructions to register-based instructions. That is correct. Your honest characterization is correct. We believe that the specification and all of the intrinsic record compels that this is only a translation from stack-based instructions to register-based instructions. Every aspect of the specification describes that. All the figures, and we cite it on pages 27 to 29 of our brief, every aspect of the written description. There is no portion of this patent that describes any alternative embodiment. And I will point out that they cited Lookup Table 78. That's their only alternative embodiment. And if one looks at figure four, where Lookup Table 78 is found, Lookup Table 78 is called the Java to Native Instruction Translation Lookup Table. It very, very clearly supports our position. It's the Java bytecode to Native Instruction Lookup Table. And more importantly, on figure four, that Lookup Table is in the context of something called the Java Accelerator Instruction Translation. And the output of that general block going to the right is Native Instructions. So even the one sole aspect that they try to say is an alternative embodiment, extremely clear that it is limited to instruction, stack-based instructions translated to native or register-based instructions. There is no alternative embodiment. I do want to address briefly the doctrine of equivalence that you pointed out. For the hardware, at least, Judge White said it was waived. And that it's never been, you know, it wasn't raised properly. I can't speak to the software. I'll let Mr. Cohen speak to that. And so if our complaint construction is accepted, we think that the hardware portion should be affirmed. And I will note in the reply brief, they didn't even attempt to distinguish our arguments that we made in our response brief. Unless the Court has any questions on the hardware aspect, I'll cede my remaining time to my colleague. Thank you, Mr. Anderson. Mr. Cohen? Mr. Woodard, would you add to Mr. Cohen's time the unused time from Mr. Anderson? Thank you, Your Honor. I'm Eric Cohen on behalf of the Penitentiary and the rest of the defendants on the software issue. The judge's construction of the indication of a reference that may need resolution can be dispositive on this appeal because Nozomi makes no infringement argument under that instruction. Not literal infringement, not doctrine of equivalence. And that is perhaps the easiest claim construction issue on this appeal because Nozomi's proposed construction of an indication of a reference that may need resolution is exactly the same of the agreed construction of another limitation, resolution data field. And this Court's precedent says that two different claim limitations in the same claim are presumed to have different meanings. We think that there's nothing in this claim that should call for an exception to that rule. And there is – the District Court did not limit its construction of this – of the indication of a reference that may need resolution to the preferred embodiment. The District Court's construction is consistent with everything in the patent specification. Nozomi admits that the District Court's construction is consistent with the embodiment shown in figures 9A and 9B. There was a dispute as to whether figure 10 showed something different. The District Court correctly found that its construction was consistent also with figure 10 and that field 180A in figure 10 is the same and figure 180B in figure 10 are the same as the two fields shown in figures 9A and 9B although they're shown in a slightly different manner. So we think that there is – that the District Court's claim construction of the indication of a reference that may need resolution is sound. It's based on the specification. It doesn't limit it to a preferred embodiment, but it's absolutely consistent with the specification. As to the constant pool, I do want to remark on that. At the time of the invention – You're saying with respect to the 160 that they have to win both on constant pool and indication of a reference? Correct, Your Honor. As to constant pool, at the time of the invention, this whole patent is directed to Java. At the time of the invention, a person skilled in the art who understood Java would understand that for every Java class file had its own constant pool. The specification describes the constant pool in a manner that is absolutely consistent with the JVM specification. It refers to the JVM specification in a manner that gives you the impression that the JVM specification was authoritative. The JVM specification, Java Virtual Machine Specification, is the specification that was published by Sun, which invented Java, that you would have to write your class files to comply with that specification if you wanted it to run. Now, their argument was, Nozomi's argument was, well, their experts said, well, there were some non-conforming virtual machines. The problem is, there's no evidence. The expert didn't identify any non-conforming aspect of those virtual machines that would permit a constant pool to be attached to more than one class. There's no evidence. There's simply no evidence in this record. My understanding was their basic argument was that there's a sentence in the specification that said this isn't limited to Java. It would extend to successor languages or something like that. So, in the light of that, you shouldn't be looking to the Java specification to determine what constant pool, whether it has to be separate or not. Even that broad language, which basically, as I read it, says, we want our claims to cover anything that might come up in the future. That basically says, it talks about Java, but it doesn't say anything about the constant pool. And the issue is not, the issue is, how would a person of ordinary skill in the art, at the time of the invention, understood constant pool? And that person would have understood the constant pool to be the constant pool to attach to each class. Now, it could be that different classes may have identical constant pools, but the way Java class files worked was, each class file had methods, it had a constant pool, and it also had a count of the constant pool. And that's also referred to in the patent specification. And that's just the way Java worked, and that's the way it would be understood by a person of ordinary skill in the art. Unless this court has any further questions, I don't feel the need to use all my time. Thank you, Mr. Cohen. No one ever gets penalized for not using all their time. Mr. Bellinger had some rebuttal time, about two minutes. Thank you, Your Honor. I want to focus my rebuttal on the software patent, the 160 patent argument. So we agree that the construction of indication of a reference does need to be reversed to have the case remanded. The construction of constant pool, this court could agree with that, but could reverse based on the failure to consider evidence on doctrine of equivalence. Regarding the indication of a reference that may need resolution, what the court below missed was the concept that the reference may be resolved or may not be resolved. And as was explained below, the embodiment of Figure 10 shows an identical 32-bit entry, which starts as all zeros, and is then updated once a reference is loaded into memory to contain the address of that memory, of that object in memory. And the specification at column two, lines 30 to 34, uses the term an indication and to indicate both to refer to data stored in the resolution data field and to refer to data stored elsewhere in the constant pool entry. So in the claim language of Claim 11, where it says storing an indication, our argument is not that it's synonymous with a resolution data field. Our argument that by storing an indication of a reference that may need resolution, it may be stored in a resolution data field, that's the embodiment of Figure 10, and that's consistent with column two. It may be stored in other places in the constant pool entry, but it's not inconsistent to say that the indication of a reference, which may need resolution, if the reference has not been resolved, that indication can be stored and is taught with respect to Figure 10 as being stored in the resolution data field. That's our basic argument. It's not that they're synonymous or that they're reading the terms to mean the same thing. It's that the indication can be stored in that location as well as elsewhere. And we believe that that's highlighted by Dependent Claim 17, which contains the limitation that the district court imposed on the independent claim. It's also highlighted by Claim 20, which also uses the term storing an indication. And in that case, the indication is the address of the object that has been resolved. Last point is appellees have said multiple times that the accused devices don't run Java programs. That's not correct. If you look at the testimony of Dr. Levitt, all of their programs are written in the Java language. They have a different way of executing them than in the prior art, but it is still directed to systems that run Java programs. Thank you, Mr. Bellinger. We'll take the case under advisement.